IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TIMOTHY V. LEPESH,**

    Plaintiff,

v.

**COLETTE PETERS; et al.,**

    Defendants.

No. 2:17-cv-1135-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Timothy V. Lepesh is proceeding *pro se* in this 42 U.S. C. civil rights action. In his Amended Complaint [11], he alleges that Defendants Oregon Department of Corrections (ODOC), Marisel Ayala, Melisa Davidson, K. Davis, Brandon Kelly, Colette Peters, Gerald Postier, Jeff Premo, R. Ridderbusch, and Captain T. Wright (collectively referred to as Defendants) violated his rights under the Oregon and federal constitutions because the food he served and consumed was marked "not fit for human consumption." He alleges that when he complained about this to Defendants Ayala and Ridderbusch they retaliated against him by firing him from his assigned jobs and sending him to segregated units. Defendants seek summary judgment on Mr. Lepesh's claims on the following grounds: (1) he failed to exhaust his administrative remedies before filing this action; (2) the applicable two-year statute of limitations bars his claims that accrued in 2013; and (3) the Eleventh Amendment bars his claims against the ODOC. As explained below, I GRANT Defendants' Motion [34].

1 –ORDER AND OPINION

## BACKGROUND

Mr. Lepesh alleges that Defendants knowingly served food that was not for human consumption to him and other inmates and that defendants Ayala and Ridderbusch ordered him to remove "not for human consumption" stickers from food boxes. [11 at 2]. He specifically states that from September 18, 2003, to October 3, 2013, and from June 24, 2018, to December 20, 2016, he worked in the Oregon State Prison's (OSP) "back kitchen" and "dry storage rooms." *Id.* at 3. Mr. Lepesh was assigned to unload food deliveries. *Id.* Many times, when receiving deliveries, he saw "clear and visible labels" saying "not for human consumption" on boxes containing fish and chicken meat products. *Id.* Mr. Lepesh claims that, after he "filed several verbal complaints and concerns" to defendants Ayala and Ridderbusch, they retaliated against him by firing him from his job and writing him up on a misconduct report based on false reasons. *Id.* at 5-6. Mr. Lepesh states that the false misconduct report resulted OSP placing him in segregated units. *Id.* at 6.

ODOC has administrative rules regarding filing and processing grievances. [35 at ¶ 5]. Inmates learn about these rules during their inmate orientation and in their prisoner handbooks. *Id.* at ¶¶ 7. ODOC's rules generally require that inmates submit grievances within thirty calendar days of the event giving rise to the grievance. *Id.* at ¶ 9. When a grievance is accepted, staff provide the inmate an initial response within forty-five days, unless the grievance requires further investigation. *Id.* at ¶ 10. If the inmate is dissatisfied with the initial response to a grievance, he or she may appeal the denial in a two-level system of review. *Id.* at ¶ 12. The inmate must file the first level of appeal within fourteen calendar days after the grievance coordinator sent the initial response to the inmate. *Id.* at ¶ 15. If the inmate is not satisfied with the functional unit manager's response, the inmate may appeal by filing a second-level appeal within fourteen calendar days from the date the first grievance appeal was sent to

the inmate. *Id.* at ¶ 16. An assistant director conducts the second level appeal. *Id.* at ¶17. The assistant director issues a final administrative decision, which is not subject to further administrative review. *Id.*

ODOC's inmate grievance tracking system shows that Mr. Lepesh has filed over sixty grievances since 2013. [35 at ¶ 18]. Two of those grievances have some relationship to this action. The first relates to an issue he had with a defendant named in his Amended Complaint—defendant Ayala—and an issue he mentioned in his Amended Complaint—his termination from his job. *Id.* at Attach. 7, p. 1. Specifically, in a grievance dated July 8, 2016, Mr. Lepesh grieved his June 24, 2016, termination, claiming defendant Ayala falsely said he left his job without telling anyone. *Id.* The July 2016 grievance did not mention either Mr. Lepesh's claim that Defendants were serving inmates food unfit for human consumption or his claim that defendant Ayala terminated him in retaliation for his complaints about the food. ODOC denied Mr. Lepesh's July 2016 grievance because ODOC rules prohibit filing a grievance about a program failure if the failure "is a direct result of a misconduct report where the inmate was found in violation," and Mr. Lepesh was found in violation of a misconduct report related to leaving his job without telling anyone. *Id.* at Attach. 8.

The second grievance, which is dated November 27, 2016 by Mr. Lepesh but stamped "received by the Snake River Correctional Institution Grievance Processing" on November 29, 2017, directly relates to complaints about being served food unfit for human consumption that Mr. Lepesh raises in his Amended Complaint, but it was untimely—it was filed more than thirty days after events complained of in the grievance. [35 at Attach. 11 and 12]. Additionally, given the prison stamp, which says 2017 not 2016, it appears that he submitted the grievance almost five months after he filed this action on July 10, 2017. *Id.*

Defendants filed their Motion for Summary Judgment on March 27, 2019. On March 28, 2019, I issued a Summary Judgement Advice Notice and Scheduling Order. [36]. As well as setting deadlines

3 –ORDER AND OPINION

for Mr. Lepesh's Response, the Order explained that, if granted, Defendants' Summary Judgment Motion could end Mr. Lepesh's case and explained what Mr. Lepesh needed to do to oppose the Motion. (*Id.*). Mr. Lepesh filed a Response opposing Defendant's summary judgment Motion on June 24, 2019, captioned "Response in Opposition to Motion for Summary Judgement and Motion to Strike the Defendants' Motion for Summary Judgment" along with a supporting declaration and exhibits. On August 6, 2019, a few weeks after Defendants filed a Reply in support of their Motion, Mr. Lepesh filed a document captioned, "Reply in Support of Motion to Strike Defendants' Motion for Summary Judgment and Plaintiff's Reply to Dkt. #50." I consider Mr. Lepesh's August 6, 2019, filing a sur-reply.

## LEGAL STANDARD

At summary judgment, the moving party bears the initial burden of pointing out the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden is met either by "produc[ing] evidence negating an essential element of the nonmoving party's claim or show[ing] that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). If the moving party carries its burden, the burden shifts to the non-moving party to set forth evidence to support its claim and to show there is a genuine issue of fact for trial. *Id.* The court views the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted). This is especially true when the non-movant is a *pro se* litigant. *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984) (stating *pro se* pleadings are liberally construed, particularly where civil rights claims are involved). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quotations and citation omitted).

## DISCUSSION

Mr. Lepesh concedes that the applicable statute of limitations bars his claims that accrued in 2013 and that Eleventh Amendment bars his claims against the ODOC. [44 at 7, 52 at 9-10]. Accordingly, I grant the Defendants' Motion about claims accruing in 2013 and against the ODOC. Mr. Lepesh, however, disputes Defendants' assertion that he failed to exhaust his administrative remedies for the claims raised in his Amended Complaint, as required by the Prison Litigation Reform Act (PLRA).

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires prisoners to exhaust all administrative remedies before they file an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Prisoners must exhaust their prison administrative procedures regardless of the type of relief sought and the type of relief available through administrative procedures. *Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010). Prisoners must exhaust their administrative remedies before they file suit, not during the pendency of the lawsuit. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir.) (per curiam). "[O]nly those individuals who are prisoners (as defined by 42 U.S.C. § 1997e(h)) at the time they file suit must comply with the exhaustion requirements of 42 U.S.C. § 1997e(a)." *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009) (concluding that because Talamantes was released from custody over a year before filing his action in federal court, he was not required to exhaust administrative remedies before filing his action). The PLRA defines a prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

Failure to exhaust administrative remedies is an affirmative defense that the defendant is required to plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). "Once the

defendant has carried that burden, the prisoner has the burden . . . to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.

It is undisputed that Mr. Lepesh meets the PLRA's definition of a prisoner, meaning he was required to exhaust his administrative remedies before filing this lawsuit. Defendants have met their burden of showing that Mr. Lepesh failed to exhaust his administrative remedies on the issues raised in his Amended Complaint—serving food unfit for human consumption and retaliating against him for complaining about the same—by submitting a copy of Mr. Lepesh's ODOC grievance record. As noted above, Mr. Lepesh filed a grievance in July 2016 related to defendant Ayala, but it did not grieve the issues raised[1] in this action. He filed a grievance about the issues raised in this action in November 2017, but his grievance was untimely under ODOC's administrative rules because it was filed more than thirty days after the incident. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) ("[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[.]").

Mr. Lepesh's argument and supporting documents in his Response and Sur-Reply does not overcome ODOC's evidence that he did not exhaust his administrative remedies. Specifically, Mr. Mr. Lepesh asserts that he filed a grievance on November 27, 2016, about the claims raised in this action, appealed the denial of that grievance, and file a second-level appeal that ODOC denied on January 17, 2017. [44 at 6; 45 at 5-6]. Review of the evidence that Mr. Lepesh offers to support this assertion shows that what he characterizes as a denial of his second-level appeal of a November 2016

---

[1] The July 2016 grievance alleges, like the Amended Complaint, that defendant Ayala made "false allegations" when she claimed Mr. Lepesh left his assigned position without telling anyone or disobeyed an order. The grievance does not, however, claim that defendant Ayala made those allegedly false statements in retaliation for Mr. Lepesh complaining about being served food unfit for human consumption, which is what he asserts in his Amended Complaint.

6 – ORDER AND OPINION

grievance was instead an acknowledgement of his tort claim response dated January 17, 2018, not 2017. [45 at 20]. Similarly, Mr. Lepesh's assertions that he orally complained to Defendants cannot overcome Defendant's evidence of his failure to exhaust; ODOC administrative rules require the filing and exhaustion of a written grievance.

Even viewing the evidence in a light most favorable to Mr. Lepesh, no reasonable trier of fact could find that he exhausted his administrative remedies before filing this action.

Mr. Lepesh argues that he did not grieve the issues raised in his Amended Complaint because he feared "retaliation from senior management and staff." [11 at 2]. As defendants acknowledge, "the threat of retaliation for reporting an incident can render the prisoner grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). Mr. Lepesh makes conclusory statements that he feared retaliation, but these statements do not create an issue of triable fact about whether his fear of retaliation effectively made the grievance process unavailable to him.

In his Amended Complaint and in his Declaration in support of his Response, he alleges that when he complained to Ayala and Ridderbusch they "retaliate[d] against me by firing me from the assigned jobs and sending me to [segregated units]." [11 at 5, 45 at 4]. While this arguably alleges retaliation for making complaints, the evidence in the record showing that Mr. Lepesh filed grievances and made verbal complaints after his June 26, 2016, termination undercuts his claim that his belief that prison officials would retaliate against him for filing grievances rendered the grievance system unavailable. Mr. Lepesh grieved his termination on July 8, 2016 [35 at Attach.7], and he asserts in his Amended Complaint that "from June 24, 2016 until October 2016, [he] personally filed several verbal complaints and concerns to [defendants] Ayala and Ritterbusch." [11 at 5].

Mr. Lepesh also points to his transfer in December 2016 to two different ODOC facilities where he was placed in segregation to support his claim that he believed prison officials would retaliate against him for filing a grievance. [44 at 7]. Again, the record does not support Mr. Lepesh's conclusory statement. A December 2016 transfer could not have caused him to believe between June 24, 2016, and October 20, 2016—the time Mr. Lepesh alleges he worked in the kitchen and food storage room areas—that prison officials would retaliate against him for filing a grievance. Moreover, the record shows that Mr. Lepesh filed grievances after December 2016, which undercuts his claim that his December 2016 transfers deterred him from pursuing grievances.

Construing the facts in the light most favorable to Mr. Lepesh, I cannot find that he has sufficiently alleged that he was deterred from filing a grievance by fears that prison officials would retaliate against him.

## CONCLUSION

I GRANT Defendants' Motion for Summary Judgment [35]. I dismiss Mr. Lepesh's claims that accrued in 2013 and his claims against ODOC with prejudice. I dismiss his remaining claims without prejudice.

DATED this 25 day of September, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge